UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CHERLYN PHILLIPS,

                           Plaintiff,

  -Against-

TOM RIDGE, UNITED STATES DEPARTMENT
OF HOMELAND SECURITY,

                           Defendant.
------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
03 Civ. 4266 (GEL)

PRELIMINARY STATEMENT

      Plaintiff by her attorneys, Law Offices of Ambrose Wotorson, submits the instant Memorandum of Law in Opposition to Defendant's Motion to for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff submits that grant of summary judgment would be inappropriate in the instant case, as there are numerous issues of material fact that can only be resolved by neutral fact finders at trial.

                    STANDARD OF REVIEW AND STATEMENT
                    OF FACTS

      Defendant contends that it is entitled to summary judgment because there are no genuine issues of material fact as to whether plaintiff was discriminated against on the basis of her race and gender, and that she was retaliated against because of her prior EEO activity. Defendant is wrong, as the record supports reasonable inferences that plaintiff suffered discrimination, and

that defendant retaliated against her in numerous ways, including, but not limited to, failing to promote her.

In any event, Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  When considering a motion for summary judgment, it is the court's responsibility "not to resolve disputed issues of fact, but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Insurance Co., 804 F.2d 9, 11 (2d Cir.1986) (emphasis supplied).

Indeed, "the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exist. Gallo v. Prudential Residential Services, 22 F.2d 1219, 1223 (2nd Cir. 1994). The burden of demonstrating the existence of a genuine issue of material fact then shifts to the nonmoving party. However, the non-movant's burden of proof to survive summary judgment is de minimis. Babcock v. CAE-Link Corp., 878 F.Supp. 377, 383 (N.D.N.Y. 1995).

Still, the non movant may not rely solely on its pleadings nor on conclusory factual allegations in satisfying this burden.  Gray v. Darien, 927 F.2d 69, 74 (2d Cir.1991).  The nonmoving party instead must offer specific evidence supporting its claim that there exists a genuine issue of material fact.   action. Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In demonstrating that the factual issue in dispute is "genuine", the nonmoving party must offer inferences upon which a reasonable jury can return a verdict in its

favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Critically, all ambiguities must be resolved and all inferences must be drawn in favor of the party against whom summary judgment is sought.  Gallo at 1223.  Summary judgment is therefore inappropriate if, resolving all ambiguities and drawing all inferences against the moving party, there exists a dispute about a material fact such that a reasonable jury could return a verdict for the nonmoving party.  Gallo at 1223-4. Finally because intent is often the critical issue in [employment] cases, the Second Circuit has repeatedly warned trial courts to be cautious about granting summary judgment to the employer.  Gallo at 1224.

      Here, Cherlyn Phillips ("plaintiff") began working for the Immigration and Naturalization Service, United States Department of Justice ("INS") on June 8, 1997 (Para. "1," Defendant's 56.1 Statement). For the period between February 1998 and September 1998, plaintiff received an overall work performance rating of "fully satisfactory." The actual rating supervisor at the time was Loretta Wilhite, while the reviewing official was Linda Pritchett. (Wotorson Affirmation, Exhibit "1"). For the period between October 1998 and September 1999, plaintiff received an overall work performance rating of "excellent." The actual rating supervisor at the time was, once again,  Loretta Wilhite , while the reviewing official was John Byrnes. (Wotorson Affirmation, Exhibit "2").

   Plaintiff was certified for consideration for a Program Analyst (Contract Performance) position, GS –343-7/9, in August 1999. Plaintiff was one of two candidate selected. (Wotorson Affirmation, Exhibit "4"). On February 15, 2000, plaintiff alleged to an EEO counselor that she had been discriminated against because of her sex and age. On April 20, 2000, an EEO investigator interviewed Jack Byrnes, the New York District Adjudication Section Chief, about plaintiff's discrimination allegations. Brynes concedes that he may have become aware of

plaintiff's prior EEO activity through this interview or through conversations with Gwen MacPherson, another of plaintiff's supervisors. (Wotorson Affirmation, Exhibit "6" and Exhibit "23," page 18, 22-25; page 19, 2-25; 20, 2-14). The same EEO investigator interviewed the New York District Supervisory Adjudication Officer, Paul Beager on February 16, 2000. (Wotorson Affirmation, Exhibit "6").

On May 8, 2000, the EEO investigator interviewed Assistant Deputy District Director for Adjudication, Gwen MacPherson about plaintiff's discrimination claims. (Wotorson Affirmation, Exhibit "6"). Gwen MacPherson testified in her deposition that she had been the selecting official in at least two prior instances when plaintiff was not selected for promotions. While MacPherson claims that she does not recall the dates when this occurred, she had been aware that plaintiff had engaged in prior EEO activity because the EEO complaints had come to her attention as the branch chief. (Wotorson Affirmation, Exhibit "22," page 17, 22-25; page 18, 2-25; 19, 2-16; 20, 11-25; 20, 2-3).

On or about July 12, 1999, the agency announced another Program Analyst position under vacancy number ER MP & RP 99-81. (Para. 16, Defendant's 56.1 Statement). Charles Troy was the selecting official, but he was assisted by Gerard Grochowski (Para. "18," Defendant's 56.1 Statement) .

On July 26, 2000, plaintiff was determined to be eligible for promotion to another Program Analyst (Contract Performance) position, GS-343-09. On the same day, plaintiff received a promotion rating for this position that was higher than the promotion rating of James C. Hausle. (Wotorson Affirmation, Exhibit "7").

On or about May 8, 2000, the agency announced another Program Analyst position under vacancy number PH 150921. (Declaration of Maureen DeMatteo, Sept. 21, 2004 ("DeMatteo

4

Decl. at paragraph 1.) Ms. Maureen DeMatteo was the selecting official for this Program Analyst position.  (Paras. "33" and "34," Defendant's 56.1 Statement).

DeMatteo had, in fact, previously met plaintiff . When the two met, DeMatteo told plaintiff. that  she had "heard a lot about her."  Thus, Matteo was at least aware of plaintiff's race and gender, (Phillips Affidavit, at paragraph "9").

For the period between October 1999 and September 2000, plaintiff received an overall work performance rating of "fully successful." However, John Byrnes, in an undated note, wrote on plaintiff's performance evaluation that the original performance work plan was allegedly misplaced, that he had had to "reconstruct it," and that plaintiff's prior first line supervisor was no longer employed in the New York office. (Wotorson Affirmation, Exhibit "5") .

Moreover, John Byrnes signed the evaluation as the "rating official" and Gwen MacPherson signed as *the reviewing* official on October 25, 2000. (Wotorson Affirmation, Exhibit "5"). However, in his deposition, Byrnes testified that while he recalled that he recreated the performance work plan in October 2000, he could not recall what, if anything, he used to "reconstruct" it, but that it is possible he used notes, e-mails and other documents which plaintiff's prior direct supervisor had maintained relating to her. (Wotorson Affirmation, Exhibit "48," 25; 49, 2-25; 50, 2-3).

On November 20, 2000, plaintiff submitted a Freedom of Information Act request to find out what happened to her application for a promotion to a Program Analyst (Contract Performance), GS-343-09. (Wotorson Affirmation, Exhibit "8" and "9").

On February 28, 2001, plaintiff filed another internal EEO complaint, and alleged that she had been subjected to racial and sexual discrimination, and reprisal because of her prior EEO activity. (Wotorson Affirmation, Exhibits "11" and "12").

Plaintiff claimed that while she was told that nobody was selected for the Program Analyst position and that the position's announcement had allegedly been cancelled, she learned that James C. Hausle, a white male, and a mere contract employee, was selected, surreptitiously, instead of her. (Wotorson Affirmation, Exhibit "11"). (Phillips Affidavit at Paragraph "7").

Gerald Grochowski, a Deputy Assistant Director in the New York District Office, initially claimed, when he was interviewed by an EEO investigator on January 24, 2003, that he knew nothing about this Program Analyst Position being awarded to James Hausle. (Wotorson Affirmation, Exhibit "18"). Yet, when pressed, Grochowski admitted on February 12, 2003, that another supervisor, Maureen DeMatteo made the decision to hire Hausle over plaintiff for the vacant Program Analyst position in Garden City, and that Hausle was a white male. (Wotorson Affirmation, Exhibit "19").

On or about August 14, 2000, the agency announced a Program Analyst position under vacancy number ER MP & RP 00-57. (Declaration of Theresa Regis, Sept. 10, 2004 ("Regis Decl."), at paragraphs 2-3.). (Para. "42," Defendant's 56.1 Statement).

For the period of October 2000 to September 2001, plaintiff received an overall rating of "fully successful." Paul Beager and Jack Byrnes, the rating official and the reviewing official, respectively, signed plaintiff's performance evaluation on October 15, 2001. (Wotorson Affirmation, Exhibit "13"). Paul Beager told plaintiff, initially, that his 2000-2001 performance evaluation had been lost.  Beiger then explained to plaintiff that "no matter what the review is the rating is going to be fully successful anyway." (Phillips Affidavit at Paragraph "11").

There is no dispute that OCORS candidates request ratings from their supervisor(s) and then submit their job packages to the OCORS rating panel in Washington, D.C. The candidates are then ranked by an OCORS panel in Washington, D.C. (MacPherson Decl. at paragraph 2.)

6

John Byrnes admits that he supervised Jose Solis, but he does not recall when he supervised Solis. Byrnes claimed that he did not recall when, and if Solis was ever plaintiff's direct supervisor. (Wotorson Affirmation, Exhibit "23", page 21, 3-20). Byrnes could neither confirm, nor could he deny, that he ever reviewed any performance evaluations which Solis had prepared for plaintiff. And while Byrnes offered that he had "a real concern" about some of the performance evaluations which Solis had performed on other employees, he could not recall if he had similar concerns about any performance evaluation that Solis had performed on plaintiff. (Wotorson Affirmation, Exhibit "23", page 23, 4-25; page 24, 2).

When confronted with a written response from Jose Solis indicating that Byrnes previously told him to lower plaintiff's performance rating because it was too high and he (Byrnes) did not want plaintiff to be promoted, Byrnes could only offer that he did not recall this exchange. Even when given an opportunity to deny that such an exchange ever occurred, Byrnes simply offered that he did not recall the conversation. Byrnes could neither confirm, nor could he deny, that he told Solis to lower plaintiff's performance rating because he did not want her to be promoted. (Wotorson Affirmation, Exhibits "20,"and "23", page 37, 23-25,  page 38, 2-25; page 39, 2-25; page 40, 2-25; page 41, 2-3).

On November 14, 2001, Solis, one of plaintiff's supervisors, appraised plaintiff's performance, "highly recommended" her for promotion, and affirmed that he has supervised her for at least 90 days. (Wotorson Affirmation, Exhibit "15"). While a separate performance work plan was initially signed by Jose Solis and John Byrnes, another supervisor, Stephen Rosina, performed and signed plaintiff's October 2001 to September 2002 performance evaluation . Rosina signed this evaluation on January 26, 2003. (Wotorson Affirmation, Exhibit "14").

Thereafter, Mr. Rosina supervised plaintiff for one (1) month. (Phillips Affidavit at Paragraph "12").

A document which purports to evaluate plaintiff's performance between October 2001 and September 2002, does not contain a single narrative relating to any tasks which plaintiff performed during this time period. In fact, the narratives which are present in plaintiff's 2001-2002 evaluation, largely concern tasks which post-date evaluation's 2001-2002 time frame. (Wotorson Affirmation, Exhibit "14"). Indeed, the first "progress review" entry is dated January 21, 2003. (Wotorson Affirmation, Exhibit "14").

In response to written questions from an EEO investigator, Jose Solis, wrote that he had information regarding plaintiff not being promoted to a Program Analyst (Contract Performance) GS-343-9 in March 2001. (Wotorson Affirmation, Exhibit "20"). Solis wrote that, "I was told by Mr. Burns (sic) that I had to lower the performance appraisal rating, because in his opinion, I had rated her [plaintiff] too high. Mr. Byrnes did not want her to qualify for positions and promotions." (Wotorson Affirmation, Exhibit "20").

Gwynne MacPherson was the selecting official for vacancy announcement number 02-64. (MacPherson Decl. paragraph(s) 23, 28, 33.) Gwynne MacPherson was the selecting official under vacancy announcement number 02-72. (MacPherson Decl. at paragraph(s) 38, 43.) (Para. "88," Defendant's 56.1 Statement). Sometime before September 6, 2002, plaintiff applied for a District Adjudications Officer positions under Vacancy Announcement Number 02-209. (MacPherson Decl. paragraph(s) 44-45.) (Para. "98," Defendant's 56.1 Statement).

On March 16, 2001, plaintiff filed a Complaint of Discrimination alleging discrimination on the basis of race, gender, and reprisal in connection with her non-selection for the Program Analyst Position Vacancy Announcement Number PHI 150921. (Para. "136," Defendant's 56.1

8

Statement). On February 28, 2002, plaintiff filed a Complaint of Discrimination alleging discrimination on the basis of race, gender, national origin, and reprisal in connection with her non-selection for the District Adjudications Officer Vacancy Announcement Number 0 1-140. (See Kennedy Decl. Exh. X.) (Para. "137," Defendant's 56.1 Statement).

ARGUMENT

POINT I

PLAINTIFF HAS ADEQUATELY STATED CLAIMS FOR
RACIAL AND GENDER DISCRIMINATION

Defendant argues that plaintiff has not established a *prima facie* case of discrimination. We disagree, as there are reasonable inferences of discrimination that can be drawn from the available record.

In any event, discrimination claims are analyzed under a three-step burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), which first requires a plaintiff to make a prima facie showing of discrimination by alleging: (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she was subjected to adverse job actions; and (4) those adverse job actions occurred under circumstances suggestive of discrimination. Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 (2d Cir. 2000).

An adverse employment action includes a "refusal to promote." Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002) (citation omitted). Once the plaintiff has demonstrated a prima facie case, "the burden shifts" to the employer who may defeat the "presumption of discrimination" by articulating a "legitimate, non-discriminatory reason" for the adverse employment action. Mario v. P & C Food Mkts., 313 F.3d 758, 767 (2d Cir. 2002).

Once the plaintiff demonstrates a prima facie case, the employer must "articulate a legitimate, clear, specific, and non-discriminatory reason" for its adverse employment actions. Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995). If the employer satisfies that burden

10

of production, the plaintiff must then prove that the employer's reasons were merely pretexts for discrimination by showing that the reasons are false, unworthy of belief and that discrimination was more likely than not, the real reason. Id.

Under the McDonnell Douglas analysis, a plaintiff must first prove by a preponderance of the evidence, a *prima facie* case of discrimination. McDonnell Douglas, 411 U.S. at 802; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). A plaintiff who claims discrimination has a *di minimis* burden of establishing the four elements to prove a *prima facie* case. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993); Austin v. Ford Models, Inc., 149 F.3d 148, 152 (2d Cir. 1998); Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir. 1997).

A plaintiff may rely upon direct evidence of what the defendants did and said, but more often than not, must depend upon the cumulative weight of circumstantial evidence to make out a *prima facie* case. Luciano v. Olsten Corp., 110 F.3d 210, 215 (2d Cir. 1997). Once a plaintiff has successfully established a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment action. Austin, 149 F.3d at 153.

If the employer makes this showing, the presumption of discrimination raised by plaintiff establishing his prima facie case drops out, and the burden shifts back to plaintiff to prove that the employer's proffered reason is a likely a pretext, and that discrimination, more likely than not, was the real reason for the adverse employment action. St. Mary's Honor Ctr., 509 U.S. at 511, 515; Fisher, 114 F.3d at 1339.

Importantly, a plaintiff may demonstrate that discrimination was the real reason by showing that it was a motivating factor, although it does not need to be the only motivating

11

factor <u>Renz v. Grey Advertising, Inc</u>., 135 F.3d 217 (2d Cir. 1997).

      Here, plaintiff concedes that there are a number of instances where the selectees are from protected groups, including other women and African-Americans. However, in one glaring instance, defendant is wholly unable to succeed on its motion for summary judgment, and in fact, defendant concedes that plaintiff has established a *prima facie* case. Indeed, in vacancy number PHI 150921, plaintiff was actually ranked higher than the eventual selectee, James Hausle who is white. The fact that plaintiff received a higher rating is proof positive, by itself, of discriminatory animus.

      DeMatteo's explanation for this selection appears pretextual in light of the fact the plaintiff had received a higher appraisal score than Hausel. Importantly, DeMatteo had previously met plaintiff and thus, was aware of her race and sex. Moreover, when DeMatteo met plaintiff, she told plaintiff that she had "heard all about" plaintiff. This reasonably could be interpreted as a comment about plaintiff's prior EEO-activity.

      Further, reasonable jurors may find it very troubling that plaintiff was specifically told that the vacancy announcement for the position had been canceled, when, in fact it had not been canceled, and instead, Hausel was surreptitiously selected for the position. While defendant has simply claimed that plaintiff's assertions are false, it is unable to point to any objective evidence to establish that plaintiff *was not* told that the vacancy announcement had been closed or withdrawn, and that nobody had been selected. Defendant is unable to contradict the documents which specifically confirm that defendant's own EEO investigators learned from sources –other than plaintiff – that the relevant vacancy announcement had been canceled, but that a selection was later made without plaintiff's knowledge.

POINT II

PLAINTIFF HAS ADEQUATELY STATED A CLAIM FOR RETALIATION

To establish a *prima facie* case of retaliation, plaintiff must show (1) that she was engaged in protected activity; (2) that defendants were aware of that activity; (3) that plaintiff suffered an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse employment action. See Collins v. N.Y. City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002); Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988). The burden of establishing this prima facie case in employment discrimination cases is "minimal." Hicks, 509 U.S. at 506; McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001); Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000)("The law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection."); Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990) (protected activities include "making complaints to management").

    Here, defendant argues that plaintiff is unable to establish any retaliation related to her protected activity of filing an EEO claim on February 15, 2000, because that claim was not made in good faith. Defendant argues that while plaintiff claimed in that complaint that she was being discriminated against on the basis of her age and sex, her complaint was brought in bad faith. As bad faith, defendant points out that plaintiff was only 38 years old at the time of her age discrimination claim, and that she was unable to recall at her deposition, some four years later, why she allowed certain boxes, and not others to be checked off in identifying her discrimination claims. Plaintiff's lack of recall, is hardly evidence of bad faith. Contrary to defendant's suggestions, plaintiff did not testify that she never had any basis for filing a claim of discrimination. She merely testified that she did not recall why she made certain claims. Here,

lack of recall cannot be used as a basis for dismissing a retaliation claim which she has litigated for at least two years now.

Critically, as defendant freely concedes, plaintiff's EEO complaint was resolved with plaintiff gaining back pay and a retroactive promotion. This suggest, at the very least, that while plaintiff did not recall at her recent deposition why she elected certain claims over others, those claims had sufficient merit that the government resolved the case with plaintiff.

Jurors can reasonably find that DeMatteo was aware of plaintiff's EEO activities, and her race since plaintiff alleges that she met DeMatteo and she (DeMatteo) told plaintiff that she had "heard all about…" her. Further, another decision maker, Macpherson, freely concedes that she was well aware of plaintiff's EEO activity at times prior to her passing over plaintiff for promotion. Thus, summary judgment would be inappropriate for those promotion denials in which MacPherson was the decision maker.

Finally, there is direct evidence in the record, that one of plaintiff's supervisors, Jack Byrnes, harbored extreme retaliatory animus towards her specifically because of her prior EEO activity. Jose Solis, one of plaintiff's prior supervisors, writes in his own hand, that Jack Byrnes told Solis to lower plaintiff's evaluation scores because he did not want her to be promoted. Defendant has, predictably, responded by attacking Solis's character and motives. Counsel has also gone so far as to attack the undersigned and to suggest that perjury was suborned. However, defendant has simply chosen to ignore the fact that Solis wrote the EEO investigator, in his own hand, and well before any affidavits were written for this litigation to state that Jack Byrnes harbored retaliatory animus in the extreme, towards plaintiff.

Defendant seems to be urging this Honorable Court to make credibility determinations based upon the written submissions of counsel. We think that would be unwise, and that it would

violate the Federal Rule of Civil Procedure 56. Indeed, defendant makes much of the fact that, Jose Solis's signature does not appear on any evaluations, and thus, he could not have changed any performance evaluations. Defendant ignores the fact that Solis made preliminary OCORS ratings have a direct impact upon plaintiff's ability to be promoted. Here, the relevant OCORS rating details plaintiff's qualifications as being "very good" in several areas, but being fair, and in some instances poor in several other areas. For example, plaintiff's OCORS rating appears to have been downgraded in the areas of supervisory expertise and collateral duties.  Jurors may reasonably infer that Solis did not give plaintiff a higher score, in part, because of Brynes' urging.

## CONCLUSION

For the foregoing reasons, defendant's Motion For Summary Judgment should be denied in its entirety, as there are numerous material issues of fact that can only be resolved by a jury.

Dated:  Brooklyn, New York
             December 15, 2004

                                                                               Respectfully Submitted,
_____/s/_____
Ambrose Wotorson (AWW-2412)
Law Offices of Ambrose Wotorson, P.C.
26 Court Street, Suite 1811
Brooklyn, New York 11242

718-797-4861