UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                    :

CHERLYN PHILLIPS,                      :
                                    :

                 <u>Plaintiff</u>,        :

                                    :           03 Civ. 4266 (GEL)

       -against-            :

                                    :       **OPINION AND ORDER**

MICHAEL CHERTOFF, United States     :
Department of Homeland Security,     :

                                    :

                 <u>Defendant</u>.    :
-----------------------------------------------------------------x

Ambrose W. Wotorson, Law Offices of Ambrose W.
Wotorson, New York, New York, <u>for Plaintiff</u>.

David N. Kelley, United States Attorney for the
Southern District of New York (David J. Kennedy,
Assistant United States Attorney), <u>for Defendant</u>.


GERARD E. LYNCH, <u>District Judge</u>:

      Plaintiff Cherlyn Phillips brings this employment discrimination action against her

former employer, the Immigration and Naturalization Service ("INS"), which is now housed

within the Department of Homeland Security.[1]  Plaintiff claims that she was passed over for

numerous promotions because of her race, sex, and prior complaints of discrimination, all in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII").

Defendant now moves for summary judgment, arguing that plaintiff has not established a prima

facie case of discrimination with respect to certain claims and has presented insufficient

evidence of discrimination in response to defendant's non-discriminatory justifications with

---

[1] Technically, the defendant is Michael Chertoff, Secretary of the Department of
Homeland Security, who is substituted for the original defendant, his predecessor Tom Ridge, by
operation of Fed. R. Civ. P. 25(d)(1).

respect to the remaining claims.  For the reasons below, defendant's motion will be granted in part and denied in part.

## BACKGROUND

There are very few factual disputes on the record before the Court, and the following facts have been admitted by both parties pursuant to Local Rule 56.1.  Plaintiff, an African-American woman (Phillips Aff. ¶ 2), began working at the INS on June 8, 1997, as a supervisory applications clerk.  (Def. Rule 56.1 Stmt. ¶ 1.)  During the first approximately one-and-a-half years of her employment at the INS, from June 9, 1997, to September 30, 1998, Phillips received a performance evaluation of "fully successful" from her supervisor at the time, Loretta Wilhite, and her second-line supervisor, Linda Pritchett.  (Id. ¶¶ 7, 10.)  Following this evaluation, some time in July 1999, the INS announced an opening for an analyst position, for which Phillips applied.  (Id. ¶ 16.)  Phillips was not awarded the position; instead offers were given to Ferne Cadogan and Monique Saunders, both of whom are African-American women.  (Id. ¶¶ 20, 24, 25.)  Although she was not selected for the analyst position in July 1999, Phillips performed well in her capacity as a supervisory applications clerk during this period.  In her performance evaluation for the period from October 1, 1998, to September 30, 1999, Phillips received a rating of "excellent" from Wilhite and her new second-level supervisor John Byrnes.  (Id. ¶¶ 12, 13, 14.)

In February 2000, Phillips filed her first complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that as a result of discrimination she was hired at a lower pay grade than she had been promised.  (Id. ¶ 30.)  This complaint was eventually resolved

in October 2000 pursuant to an agreement between Phillips and the INS, whereby Phillips received a retroactive promotion in pay scale.  (Id. ¶ 30, 32.)

With the EEOC complaint pending, in May 2000 the INS announced another vacancy for an analyst position.  Again Phillips applied for the vacancy and again the position went to another.  This time James Hausle, a white man, received the position.  (Id. ¶¶ 35, 37, 41.) Plaintiff's disappointments continued in August 2000, when yet another open analyst position was awarded to someone other than Phillips – Sonia Hernandez, an Hispanic woman.  (Id. ¶¶ 42, 49.)  During this period, from October 1, 1999, to September 30, 2000, Phillips's job performance regressed to her 1998 rating; she received a "fully successful" evaluation from Byrnes, who was at this time her supervisor, and second-level supervisor Gwynne MacPherson. (Id. ¶¶ 26, 28.)

In the wake of her three unsuccessful applications for promotion, Phillips filed her second EEOC complaint in March 2001, alleging discrimination based on race, gender, and retaliation in connection with her non-selection for the May 2000 analyst position which was awarded to Hausle.  (Id. ¶ 136.)  Following this complaint, in October 2001, Phillips received another evaluation of "fully successful" from Michael Borgen, her supervisor, and Byrnes, who was then her second-line supervisor.

Phillips did not apply for any subsequent analyst openings.  Beginning in November 2001, however, Phillips began applying for positions as a District Adjudications Officer ("DAO").  The November 2001 opening resulted in an offer to Thomas Pepitone, a white man. (Id. ¶ 62.)  Pepitone declined the position and candidates were reconsidered for the opening. Phillips fared no better in the second round; the job was offered to Karen Washington, a black

woman.  (Id. ¶¶ 66, 67.)  In February 2002, Phillips challenged her non-selection for the DAO opening by filing a complaint with the EEOC alleging discrimination based on race, gender, national origin, and retaliation.  (Id. ¶ 137.)

Over the next seven months Phillips applied for five more DAO positions and received no offers.  Offers for openings in April 2002 went to Desiree Goode Clark, a black woman; Kimberlee Kelley, who did not indicate a race or sex but whose name suggests she is female; Valerie Wright, a black woman; Roseann Zenda, a black woman; Yvenice Andres, an Hispanic woman; Carmen Rivera Garcia, an Hispanic woman; Keith McCalman, a black man; Kathleen Gabriel, who did not indicate a race or sex but whose name suggests she is female; Daisy Rodriguez-Figueroa, who did not indicate a race or sex but whose name suggests she is female; and Tanya Marie, a black woman.  (Id. ¶¶ 69-87.)  Offers for openings in May 2002 went to Marcella Campbell, a white woman, and Lisa Williamson, a black woman.  Two openings were announced at the beginning of September 2002.  No offers were extended in connection with the first September 2002 opening.  (Id. ¶¶ 98-101.)  For the second September 2002 opening the only offer went to Maria Passarelli, a white woman.  (Id. ¶ 104.)  Finally, a third September 2002 opening was announced at the end of the month, and the only offer went to Judith Carty, a black woman.  (Id. ¶ 109.)

Following this string of applications and non-selections, Phillips received two more performance evaluations.  Under normal circumstances Phillips would have received an evaluation for the period from October 1, 2001, to September 30, 2002, but because Phillips was on medical leave from May 24, 2002, to September 30, 2002, the evaluation period was extended to January 30, 2003.  (Id. ¶¶ 126-128.)  Phillips's rating for the extended period was "fully

successful" as evaluated by her supervisor Stephen Rosina and her second-line supervisor

Ronald Atkinson. (Id. ¶ 129.) Phillips received the same rating of "fully successful" for the

most recent relevant period, ending in September 2003, again from Rosina and Atkinson. (Id. ¶

133.)

## DISCUSSION

I. <u>Summary Judgment Standard and Title VII Requirements</u>

Summary judgment shall be granted if the Court determines that "there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c). A "genuine issue of material fact" exists if the evidence is such that a

reasonable jury could find in favor of the non-moving party. <u>Holtz v. Rockefeller & Co.</u>, 258

F.3d 62, 69 (2d Cir. 2001). The moving party bears the burden of establishing the absence of

any genuine issue of material fact. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).

In deciding a summary judgment motion, the Court must "resolve all ambiguities and draw all

reasonable inferences in the light most favorable to the party opposing the motion." <u>Cifarelli v.</u>

<u>Babylon</u>, 93 F.3d 47, 51 (2d Cir. 1996). In addition, the Court is not to make any credibility

assessments or weigh the evidence at this stage. <u>Weyant v. Okst</u>, 101 F.3d 845, 854 (2d Cir.

1996).

To determine which facts are material, the Court must look to the substantive law that

supplies the basis for the claims at issue. <u>See</u> <u>Liberty Lobby</u>, 477 U.S. at 248. The Supreme

Court case of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), provides the framework

to evaluate a claim under Title VII. First, the plaintiff must make out a prima facie case of

discrimination by showing that "(1) she is a member of a protected class; (2) she applied and was

qualified for a job for which the employer was seeking applicants; (3) she suffered an adverse employment action; and (4) the circumstances surrounding that action permit an inference of discrimination." Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 126 (2d Cir. 2004); accord, McDonnell Douglas, 411 U.S. at 802. For a claim of retaliation, the plaintiff's prima facie case must show that (1) she participated in a protected activity about which defendant was aware; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. See Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004).

After plaintiff has made the required prima facie showing, a presumption of discrimination is created and the burden of production shifts to the defendant, who must then offer "evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). The determination whether or not the defendant has met this burden "can involve no credibility assessment." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993). After the defendant produces evidence of a non-discriminatory reason for its actions, the McDonnell Douglas presumption disappears, and all that remains is the ultimate burden of persuasion which must at all times be born by the plaintiff. Id. at 510-11. To avoid summary judgment the plaintiff must then present sufficient evidence for a reasonable fact finder to conclude that the defendant's purported explanation is merely a pretext, and that intentional discrimination was actually a factor in defendant's actions. Reeves, 530 U.S. at 143.

II. <u>Phillips's Prima Facie Showing and Defendant's Rebuttal</u>

Phillips claims that each of the previously discussed nine non-selections for promotions within the INS were motivated by race and sex discrimination and by retaliation for engaging in protected EEOC activity. Therefore, each individual non-selection must be analyzed separately to determine whether it satisfies the requirements of a prima facie claim under Title VII. This approach is not one in which myopic focus on the minutiae of each isolated event is allowed to obscure a larger pattern of discrimination. Rather, the broader series of events will be considered when determining what inferences a fact finder could draw when evaluating the motivations for any one specific non-selection. But to survive summary judgement plaintiff must show that she suffered a specific adverse employment action on the basis of a prohibited ground of decision, and only through a case-by-case analysis can the existence of such a showing be determined.

In order to analyze these various complaints, the Court will first discuss, as to each separate promotion opportunity, whether plaintiff has established a prima facie case on any of the three claimed bases of discrimination and, where she has done so, whether defendant has set forth a legitimate non-discriminatory reason for its decision. Where the claim survives this analysis, the Court will go on in Part III to address whether plaintiff has presented evidence from which a reasonable fact finder could conclude that the particular failure to promote plaintiff was based on a prohibited ground of discrimination.[2]

---

[2] This analysis is made more difficult because plaintiff's briefing makes little or no effort to clarify her claims. Plaintiff's brief seems to proceed as if there were a generalized cause of action for "failure to promote over a period of time." As a result, it is not clear which specific adverse employment actions plaintiff claims were taken for a prohibited discriminatory reason.

As an initial matter, it is clear that Phillips satisfies the first and third requirements for a prima facie case of race or sex discrimination: as a black woman, she is a member of a protected class with respect to both race and sex, and she was not given an offer in response to any of her applications, each non-selection being an adverse employment action. Defendant does not argue otherwise. Furthermore, defendant does not argue in its briefing that a lack of qualifications prevents Phillips from making out a prima facie case. To the extent defendant argues that Phillips was not qualified, it does so in the course of providing a non-discriminatory reason for her non-selection. (See, e.g., Def. Mem. Supp. Summ. J. 16-17.) Therefore, defendant appears to concede that a reasonable fact finder could conclude Phillips was qualified for the positions to which she applied, at least to the extent necessary to make a prima facie showing.

A. The July 1999 Analyst Position

The first adverse employment action about which Phillips complains is her non-selection for an analyst position in July 1999. Phillips cannot make out a prima facie showing with respect to any form of discrimination in connection with this non-selection.

With regard to her retaliation claim, Phillips did not make her first EEOC complaint until February 2000, and so in July 1999 there was simply no protected activity for which defendant could have been retaliating. Therefore, the retaliation claim fails as a matter of law.

As for her race and gender discrimination claims, Phillips admits that the two offers made in connection with the July 1999 opening went to African-American women. Defendant argues that this fact alone prevents Phillips from making out a prima facie case of discrimination. (Def. Mem. Supp. Summ. J. 16.) Our Court of Appeals appears to have disfavored this argument in Brown v. Henderson, which stated that "discrimination against one employee cannot be cured, or

disproven, solely by favorable, or equitable, treatment of other employees of the same race or sex." 257 F.3d 246, 252 (2d Cir. 2001). In support of this proposition the Court of Appeals cited approvingly to the Seventh Circuit case of Carson v. Bethlehem Steel Corp., 82 F.3d 157, 158 (7th Cir. 1996), describing that court as "rejecting the argument that plaintiff's replacement by a worker of the same race precluded the establishment of a prima facie case of race discrimination." Brown, 257 F.3d at 253.

Brown and Carson are factually distinguishable from the present case. Brown involved a hostile work environment claim as to which the Court of Appeals rejected defendant's argument that there was no prima facie showing because both men *and* women were subjected to harassment in the workplace. Carson involved a plaintiff who was fired and then replaced by an employee of the same race. In that situation, hiring black employees is not inconsistent with subjecting such employees to discriminatorily higher retention standards. Neither case involved claims of non-selection, such as those made by Phillips. In the present context, it is difficult to see how race or sex could have played a prohibited role in defendant's selection of one black woman over another for an open position.

Even assuming, however, that there are some circumstances in which selecting a person of the same race or sex as the plaintiff does not preclude a prima facie showing as a matter of law, this case does not present such circumstances. To make a prima facie showing, the plaintiff must offer at least some minimal evidence to show that the circumstances permit an inference of discrimination. Often that evidence is the fact that an individual of a different race or sex received the position at issue while the plaintiff did not. Where that is not the case, however, a plaintiff must point to something else that permits an inference of discrimination. Although the

burden of establishing a prima facie case is indeed minimal, <u>Carlton v. Mystic Transp., Inc.</u>, 202 F.3d 129, 134 (2d Cir. 2000), it is not totally illusory; the plaintiff must point to *some* circumstance that permits an inference of discrimination. Phillips does not. In the face of defendant's argument that the selection of two African-American women for the July 1999 position defeats her prima facie showing, Phillips appears to abandon her claim, "conced[ing] that there are a number of instances where the selectees are from protected groups, including other women and African-Americans" (Pl. Mem. Opp. Summ. J. 12), and proceeding to argue that a prima facie showing *has* been made with respect to the one instance where a white man was selected. By coming forward with no evidence to raise an inference of discrimination, Phillips has failed to make out a prima facie case of race or sex discrimination with respect to the July 1999 position.

B. <u>The May 2000 Analyst Position</u>

Phillips does present a prima facie case of race and sex discrimination, although not of retaliation, with respect to the May 2000 analyst position, which was announced after her February 2000 EEOC complaint, and for which an offer was extended to James Hausle, a white man.

1. <u>Retaliation Claim</u>

Defendant argues that Phillips's February 2000 EEOC complaint cannot form the basis of a retaliation claim because it was not filed in good faith. <u>See</u> <u>Manoharan v. Columbia Univ. College of Physicians & Surgeons</u>, 842 F.2d 590, 593 (2d Cir. 1988). To support this argument, defendant points to two facts: Phillips filed a claim of age as well as gender discrimination, although she was only 38 at the time; and during her deposition in this matter she stated,

regarding the EEOC complaint, "EEO doesn't always state discrimination in so many ways" (Phillips Dep. 28), supposedly an admission that her complaint was not actually based on an allegation of discrimination. Whatever the merits of her age discrimination claim, the Court cannot find on this record that Phillips's gender claim was made in bad faith. Phillips's deposition, read in the light most favorable to her, indicates that she simply can't remember the basis for her discrimination claims in February 2000, not that she filed them in bad faith. Therefore, Phillips has satisfied the first half of the first requirement for stating a prima facie retaliation claim: she filed an EEOC complaint.

However, to fully satisfy the first requirement of a prima facie claim of retaliation Phillips must also show that defendant was *aware* of the protected activity, and Phillips cannot satisfy this part of the requirement. The individual responsible for selecting applicants for the May 2000 position was Maureen DeMatteo (Def. Rule 56.1 Stmt. ¶ 34), who swears that before she "was contacted with reference to this lawsuit, [she] did not know anything about Ms. Phillips'[s] prior EEO activity" (DeMatteo Aff. ¶ 7, Def. Rule 56.1 Stmt. ¶ 40). Phillips alleges that DeMatteo *did* have knowledge of her prior EEOC complaint (Pl. Rule 56.1 Stmt. ¶ 40), but bases this allegation solely on the fact that upon meeting Phillips, DeMatteo commented that she had "heard a lot about [her]" (Phillips Aff. ¶ 9). This lone statement, which gives no indication of what DeMatteo had heard, does not contradict DeMatteo's unambiguous and unrefuted claim that she had no knowledge of Phillips's EEOC complaint, and thus is insufficient to satisfy Phillips's burden to show that DeMatteo knew of her protected activity when making the selection for the May 2000 position.

In addition to her claims about DeMatteo, Phillips alleges elsewhere in her briefing that one of her supervisors, John Byrnes, sought to retaliate against her for her EEOC complaints. Byrnes was not involved with the selection for this position, or any position to which Phillips applied, but he did provide several evaluations of Phillips during her employment at INS that she claims were lowered based on retaliatory animus. However, even if a fact finder were to credit Phillips's claims about Byrnes – a possibility that will be discussed further below – those claims cannot raise an inference of retaliation here. Byrnes was involved with only one evaluation of Phillips that pre-dated her May 2000 application – her evaluation for the October 1, 1998, to September 30, 1999, period in which he was her second-level supervisor – and while it would be reasonable to infer that that evaluation influenced DeMatteo, Byrnes's evaluation for that period was one of "excellent," the only time (so far as this record reveals) that Phillips ever received so high a rating. (Def. Rule 56.1 Stmt. ¶¶ 12, 13, 14.) Phillips has not produced any evidence tending to show that this high rating somehow negatively affected her chance of selection for the May 2000 opening, and on the current record a reasonable fact finder could not infer that it did. Therefore, Phillips cannot make out a prima facie case of retaliation regarding the May 2000 non-selection, and that claim must fail as a matter of law.

### 2. Race and Sex Discrimination Claims

Phillips can make out a prima facie case of race and sex discrimination in connection with the May 2000 analyst position because the individual selected for the position, James Hausle, is a white man. Cf. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 135 (2d Cir. 2000) (stating, in the context of age discrimination, that plaintiff's replacement by a younger worker is evidence of discrimination). Because Phillips has stated a prima facie case, the burden shifts to

defendant to present a non-discriminatory justification for her non-selection. Defendant claims that Hausle "was more qualified for the position" based on the fact "he was already working as a contractor and had demonstrated the necessary experience and skills necessary to perform the specific responsibilities the Program Analyst position required." (DeMatteo Aff. ¶ 5.) Additionally, defendant notes that Hausle had been working at the INS for one month longer than had Phillips (compare DeMatteo Aff. Ex. A, with id. Ex. B) and, unlike Phillips, was already working in the Garden City office in which the position was available (id. Ex. B). These facts suffice to satisfy defendant's burden of production. Phillips's sex and race discrimination claims for the May 2000 analyst position will thus survive summary judgment only if she has presented sufficient evidence for a fact finder to conclude that defendant's purported explanation – that Hausle was more qualified – is pretextual and that discrimination was a factor in the decision. Whether Phillips has succeeded in that endeavor on any of her prima facie claims will be discussed below.

C. The August 2000 Analyst Position

As with the July 1999 analyst position, Phillips makes no attempt to show that the circumstances surrounding her non-selection for the August 2000 position permit an inference of either race or sex discrimination. An Hispanic woman, Sonia Hernandez, was selected for the position. (Def. Rule 56.1 Stmt. ¶ 49.) Both the individual who recommended Hernandez, Theresa Regis, and the individual who selected her based on that recommendation, Yvonne Smalls, are African-American women. (Def. Rule 56.1 Stmt. ¶¶ 43, 45, 46.) These circumstances, of course, do not preclude Phillips from making a prima facie showing of discrimination; but where a woman of color was selected for the position and the decision was

made by two African-American women, a plaintiff must point to some other evidence to support a claim that her non-selection was based in part on race or sex discrimination. Phillips presents none.

As for her retaliation claim, Phillips makes no claim that either Regis or Smalls knew anything about her prior EEOC complaint. As mentioned above, Plaintiff does argue that one of her supervisors, Jack Byrnes, "harbored extreme retaliatory animus towards her specifically because of her prior EEO activity" and that this animus resulted in lower evaluations. (Pl. Mem. Opp. Summ. J. 14.) Byrnes was Phillips's supervisor for the period from October 1, 1999, to September 30, 2000, and at some point during that time he learned of her EEOC complaint. (Byrnes Dep. 18-20.) As opposed to the rating of "excellent" Byrnes gave Phillips the previous year, his evaluation for this period was a middling "fully successful." However, while Phillips's August 2000 application occurred within this "fully successful" rating period, her evaluation for that period was not completed until October 2000. As of August the most recent completed evaluation for Phillips was still the rating of "excellent" she had previously received. In fact, Phillips's application materials for the August 2000 position included her 1999 evaluation form with its rating of "excellent" (DeMatteo Aff. Ex. A, at 9), and Phillips presents no evidence that, besides this "excellent" evaluation, Byrnes had any influence on the decisionmaking process. Thus, as with the May 2000 position, Phillips has produced no evidence of any link between Byrnes's alleged animus and her non-selection for the August 2000 position. Without any showing that the selecting officials knew about Phillips's EEOC activity, or any connection between her non-selection and any poor evaluation from Byrnes, Phillips has failed to make a prima facie claim of retaliation.

-14-

D.  The DAO Positions

Phillips's six applications to DAO positions, because of the similar circumstances surrounding each non-selection, are best discussed in the aggregate.

1.  Race and Sex Discrimination Claims

Once again, Phillips presents no evidence that the circumstances surrounding any of the DAO hiring decisions permit an inference of discrimination based on either race or gender.  The November 2001 opening went to a black woman.  The April 2002 opening resulted in offers to ten individuals – four black women, two Hispanic women, three women of undeclared race, and one black man.  The May 2002 opening resulted in offers to a white woman and a black woman.  The final September 2002 opening resulted in an offer to a black woman.  In each of these instances black women received offers for the DAO positions, and in each of these instances Phillips fails to produce any evidence that raises an inference of discrimination.  Again, the fact that a defendant promoted a few individuals of a plaintiff's same race or sex does not conclusively prevent a plaintiff from making a prima facie showing of discrimination, and the burden upon plaintiff to make such a showing is slight.  But here, where defendant has selected other black and female applicants ahead of Phillips, where women and minorities dominated the ranks of those promoted, and where Phillips has pointed to *nothing* in the record, including any statistical analysis, that could possibly give rise to an inference of discrimination, Phillips has not met her burden to make a prima facie showing that the circumstances of her non-promotion permit an inference of discrimination.  Therefore, Phillips has not raised a prima facie claim of race or sex discrimination with respect to the November 2001, April 2002, May 2002, or final September 2002 DAO applications, and those claims fail as a matter of law.

In connection with the two remaining DAO openings – the first and second openings in September 2002 – Phillips is able to make out at least partial prima facie claims of discrimination. With regard to the first September 2002 opening, defendant concedes that Phillips has carried her initial burden, based on the fact that no applicants were selected to fill that vacancy. (Def. Mem. Supp. Summ. J. 21.) Therefore, based on defendant's admission, Phillips has made out a prima facie case of race and sex discrimination with respect to the first September 2002 DAO position. The second of the September 2002 DAO openings resulted in an offer to white woman, and once again Phillips points to no evidence that would raise an inference of sex discrimination. Therefore, because the selectee was female and the circumstances raise no inference of sex discrimination, Phillips's sex discrimination claim in connection with the second September 2002 DAO opening fails as a matter of law. However, because the selectee was white, Phillips has satisfied her initial burden and made out a prima facie case of racial discrimination with respect to the second September 2002 DAO opening.

Because Phillips's race and sex discrimination claims for the first September 2002 DAO opening and her race discrimination claim for the second September 2002 DAO opening have satisfied the initial requirement of a prima facie showing, the burden now shifts to the defendant to provide a non-discriminatory justification for its decisions. To meet that burden the defendant presents the Officer Corps Rating System ("OCORS"), which was the procedure used to fill each of the DAO positions. (Def. Rule 56.1 Stmt. ¶ 54.) Applicants to DAO positions sent their application packages and supervisor evaluations to the OCORS panel in Washington, D.C. The panel then reviewed the applications and evaluations to create a ranked list of all the applicants, which was then sent back to the INS office in New York to assist the selection official in

determining who would receive offers. (Id. ¶¶ 56, 57.) The OCORS rankings are given

significant weight in the selection process. (Id. ¶ 58.) For the first September 2002 DAO

opening, Phillips ranked last out of all applicants considered for the position – eighth out of

eight. (Def. Rule 56.1 Stmt. ¶ 99.) For the second September 2002 DAO opening, Phillips

ranked second to last – tenth out of eleven. (Id. ¶ 102.) Defendant credits Phillips's low

rankings on the OCORS lists, not her race or gender, with her non-selection for the first and

second September 2002 DAO positions. Phillips's near-bottom ranking on both lists serves to

satisfy defendant's burden of production under the <u>McDonnell Douglas</u> analysis, and therefore

these claims must be analyzed under the usual summary judgment standard.[3]

### 2. Retaliation Claims

Phillips is able to make out a prima facie claim of retaliation in connection with her non-

selection for all six DAO positions.

As compared to the numerous promotion offers made to black women, the record is not

so replete with examples of offers being extended to DAO applicants with a history of EEOC

complaints. Only two individuals with prior EEO activity received offers for DAO positions –

Karen Washington, who received an offer for the November 2001 opening (Def. Rule 56.1 Stmt.

¶ 67), and Carmen Rivera Garcia, who received an offer for the April 2002 opening (id. ¶ 80).

But even with respect to those openings Phillips has made a prima facie showing. As discussed

above, Phillips has alleged that her supervisor Byrnes both knew of her prior EEOC complaints

and lowered her evaluations because of them. This allegation is supported by Jose Solis, a one-

---

[3] The effect of Byrnes's evaluations on Phillips's DAO rankings need not be considered
here, as Phillips only alleges that Byrnes harbored *retaliatory* animus toward her, not that he
discriminated on the basis of race or sex.

time supervisor of Phillips, who stated at his deposition that Byrnes told him to lower his evaluation of Phillips because of her EEOC complaints. (Solis Dep. 87.) As admitted by defendant, supervisor evaluations are sent to the OCORS panel for use in creating the ranked list, although the nature of the evaluations, the relevant period for which they are provided, and the weight given to them in the overall ranking are not clear from the record. Regardless, Phillips has provided evidence that shows: (1) Byrnes knew about her EEOC complaints; (2) she was not selected for any of the DAO openings; and (3) Byrnes's evaluations, which allegedly were lowered in response to her EEOC complaints, factored into her lower OCORS rankings, which in turn resulted in her non-selection.[4] That is a prima facie showing of retaliatory discrimination with respect to all six DAO openings.

In response to Phillips's prima facie showing on these claims, defendant points to the OCORS rankings themselves as the legitimate non-discriminatory reason for her non-selection. (Def. Mem. Supp. Summ. J. 19-20.) As noted, Phillips claims that these rankings are tainted by Byrnes's lowered evaluations, the product of his "retaliatory animus." Byrnes himself, not surprisingly, does not join in this explanation for Phillips's low evaluations. When asked directly whether he ever told Solis – who claimed Byrnes instructed him to lower Phillips's evaluations – to change her rating, Byrnes responded:

> I gave them back to him. I remember I got them, I gave them back to him and I said, "Listen, you have to put why you reach these evaluations. You can't just put down somebody is outstanding, you know, because that's what you think or you find them to be an excellent person. I mean, that's not objective. . . . You have to put

---

[4] Because neither party presents evidence showing how supervisor evaluations factored into the OCORS ranking, this Court must assume, in taking all inferences in favor of the non-moving party, that the evaluations played a significant role.

> facts down." . . . So, yes, [I told him to] change the ratings,
> because [he doesn't] have the background.

(Byrnes Dep. 31-32.)  Byrnes thus claims a different motivation – a demand for factual

background – for his dissatisfaction with Solis's evaluations.  When asked if he would have

asked Solis to lower a rating without regard for background criteria, Byrnes responded, "No."

(Id. 33.)

Because defendant's burden in providing a non-discriminatory justification for its actions

"is one of production, not persuasion[,] it can involve no credibility assessment."  Reeves v.

Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (internal quotation marks omitted).

As Byrnes's own testimony contradicts Phillips's allegation of retaliatory motives, a fact finder

could conclude that Byrnes's evaluations did not "taint" her OCORS rankings.  Therefore,

defendant's reliance on the OCORS rankings to justify its non-selection of Phillips satisfies its

burden of production with respect to Phillips's claims of retaliation.  These claims too, then,

must be evaluated under the ultimate burden of persuasion.

III.  Phillips's Evidence of Pretext and Discrimination

After the initial burden shifting is completed, the McDonnell Douglas presumptions

simply disappear and the remaining claims are subject to traditional summary judgment

evaluation on the question of whether or not there was intentional discrimination.  Reeves, 530

U.S. at 142-43.  The Court must "examin[e] the entire record to determine whether the plaintiff

could satisfy h[er] 'ultimate burden of persuading the trier of fact that the defendant intentionally

discriminated against [her].'"  Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000), quoting

Reeves, 530 U.S. at 143; see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973);

Cruz v. Coach Stores, Inc., 202 F.3d 560, 567 (2d Cir. 2000) (stating that plaintiff must come

forward with evidence from which a reasonable fact finder could conclude that the defendant's non-discriminatory justifications are merely pretexts for intentional discrimination). That evidence may include that which supported her prima facie claims. Reeves, 530 U.S. at 143. Ultimately, however, "[w]hether judgment as a matter of law is appropriate in any particular case will depend on a number of factors, [including] the strength of plaintiff's prima facie case, the probative value of [plaintiff's] proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." Id. at 148-49.

Phillips has eleven claims for which she has made a prima facie showing and the defendant has provided a rebuttal: race and sex discrimination claims in connection with her non-selection for the May 2000 analyst position; race and sex discrimination claims in connection with her non-selection for the first September 2002 DAO position; a race discrimination claim in connection with her non-selection for the second September 2002 DAO position; and retaliation claims in connection with her non-selection for all six DAO positions.

A.  Race and Sex Discrimination Claims

In an attempt to supplement her prima facie showings and assemble evidence from which a fact finder could conclude that intentional race or sex discrimination was a reason for her numerous non-selections, Phillips presents what can best be described as irrelevant innuendo. As an initial matter, with the exception of the May 2000 analyst position for which a white man was selected, Phillips provides absolutely *no* evidence of race or sex discrimination above her prima facie showing.  (Pl. Mem. Opp. Summ. J. 12.)  In connection with the May 2000 selection of Hausle, a white man, Phillips puts forth three pieces of evidence.  First, she notes that she was

"ranked higher" than Hausle, receiving a rating of 98 to his 96 on a particular evaluation[5] (Wotorson Aff. Ex. 7), and argues that her higher ranking is "proof positive, by itself, of discriminatory animus." (Pl. Mem. Opp. Summ. J. 12.) Second, she claims that DeMatteo, the selecting official for the May 2000 position, had previously met Phillips, and therefore knew she was black and female. (Id.) Finally, Phillips alleges that after she applied for the May 2000 opening she was told by an EEO counselor that it was canceled, only later to learn that it was in fact not cancelled, but was awarded to Hausle. (Phillips Aff. ¶ 7.) As corroboration for this claim, Phillips points to two separate documents from an EEO investigator indicating that on January 24, 2003, a director at INS named Gerald Grochowski told the investigator that he had "no specific knowledge" regarding the May 2000 opening (Wotorson Aff. Ex. 18), but then on February 12, 2003, told the investigator that Hausle was selected for the position (Wotorson Aff. Ex. 19). Phillips describes these facts as "very troubling." (Pl. Mem. Opp. Summ. J. 12.)

Even drawing all inferences in favor of Phillips, she has not produced sufficient evidence for a fact finder to conclude that her non-selection for any of the positions was the result of race or sex discrimination. Looking to the factors set forth in Reeves, Phillips's prima facie showing on each claim is exceeding thin, as it is based solely on the fact that no individual selected for the positions shared her race or sex (in a context in which, as noted above, women and minorities were frequently selected over Phillips for other similar positions for which she also applied). Phillips's attempts to disprove defendant's proffered justifications for the hiring decisions are nonexistent, except as to the May 2000 claim, and even with respect to that claim the probative

---

[5] Neither Phillips nor defendant offers any explanation of how this rating is computed, what it evaluates, or what weight it has in the selection process.

value of her proof is slight.  The argument that Hausle's rating of 96, as compared to Phillips's 98, is in and of itself proof of discriminatory animus – an argument for which Phillips provides no authority – has been rejected by our Court of Appeals.  See Davis v. State Univ. of New York, 802 F.2d 638, 641 (2d Cir. 1986) ("The employer need not prove that the person promoted had superior objective qualifications . . . .").  Rather, the rating is just one piece of evidence to be considered as part of the record as a whole, including the defendant's justification for its choice of Hausle: that he was already doing similar work, in a similar role, as an independent contractor in the same office that had the opening, and that he had slightly more experience with the INS.

Phillips's evidence of misinformation concerning the cancellation of the May 2000 position is completely irrelevant to whether the INS chose Hausle over Phillips because of race or sex discrimination.  No reasonable fact finder could infer that DeMatteo, the selecting official, acted with discriminatory motives based on evidence that: (1) some EEO official, for some unknown reason, told Phillips that the position had been cancelled, and (2) Grochowski, an INS official who had nothing to do with the selection process for the May 2000 position, didn't know that Hausle was chosen in January 2003, but did know he was chosen one month later.  Even taking that evidence and all the possible inferences in the light most favorable to Phillips, such evidence cannot support a reasonable finding that DeMatteo, the individual who actually decided to hire Hausle instead of Phillips, was motivated by Phillips's race or sex in selecting Hausle.

Finally, as Reeves commands, this Court must look to the record as a whole, not simply Phillips's attempts to refute defendant's justifications, to determine whether summary judgment is appropriate.  Here, an examination of additional evidence in the record presents additional obstacles for Phillips's race and sex discrimination claims.  The nine positions for which Phillips

applied resulted in offers to twenty individuals: two white men, two white women, three women of undetermined race, one black man, three Hispanic women, and *nine* black women. Eighty-five percent of all offers went to women. Only twenty percent of all offers went to individuals identified as white. Forty-five percent of offers went to black women. Since the record contains no evidence of the application pool as a whole, it cannot be said that this record of promotion conclusively refutes any claim of race or sex discrimination. However, the overall promotion record, on its face, provides no support for an inference of such discrimination. Moreover, Phillips does not dispute the accuracy of the facts cited by defendant as favoring Hausle, nor does she offer any evidence that those facts, which are reasonable bases for an employer to select an employee for promotion, are not ordinarily considered by defendant in promotion decisions.

The record thus does not contain sufficient evidence for a reasonable fact finder to conclude that plaintiff's non-selections for the May 2000 analyst position, the first September 2002 DAO position, or the second September 2002 DAO position were based on either sex or race. For the two September 2002 positions, Phillips has produced *no* evidence to refute defendant's non-discriminatory justification for her non-selections. Therefore, those claims must fail as a matter of law. The evidence she does produce with respect to the May 2000 claim is insufficient to create a question of fact. Her prima facie showing, based simply on the fact that Hausle is a white man, is thin. The evidence that she at some point was told the position was cancelled is irrelevant. The mere fact that she received a rating two points higher than Hausle, on an evaluation the importance of which is unclear from the record, is simply not enough to support a finding of discrimination when compared to the non-discriminatory justification offered by defendant and the record of selections overall, which illustrates that promotion

applications by black women were frequently successful. Therefore, even those race and sex discrimination claims for which Phillips has made a prima facie showing must fail as a matter of law, because she has presented insufficient evidence for a finder of fact to conclude that race or sex discrimination was a reason for her non-selections.

B. Retaliation Claims

Phillips has, however, raised an issue of fact in connection with the retaliation claims for which she has made a prima facie showing – the six DAO positions. The evidence provided by the deposition of Solis, regarding the alleged retaliatory animus of Phillips's one-time supervisor Byrnes, is sufficient to support those claims of retaliation.

Solis testified at his deposition that Byrnes instructed him to give Phillips a lower evaluation than the one he initially submitted. According to Solis, Byrnes gave three reasons to adjust her rating: "she never had the work that we needed to have done" (Solis Dep. 85); "she is never on top of her staff" (id. 86); and Byrnes did not want her to be "accepted or be promoted or reassigned to a better job in other places . . . . [S]he is known as someone who is always writing EEO complaints and so on and so on. And as a result of that, like, we cannot reward her with this type of rating" (id. 86-87). This evidence presents a question of fact regarding Byrnes's motivations and actions as Phillips's supervisor and the effects of those motivations and actions on her evaluations.

Defendant argues that Solis's deposition testimony does not create a genuine issue of fact for two reasons. First, defendant points out that while Solis claims he was told to lower Phillips's rating, Phillips can point to no specific evaluation that was in fact lowered by Solis at Byrnes's request. (Def. Reply Mem. Supp. Summ. J. 8-9.) This is because, as Phillips admits,

Solis was not Phillips's supervisor on any final performance evaluation during Phillips's employment at the INS.[6]  Solis was, however, Phillips's supervisor for some time in 2001 and 2002.  (Def. Rule 56.1 Stmt. ¶¶ 113, 114.)  To the extent defendant relies on this evidence to argue that Solis's testimony is inaccurate, that argument goes to Solis's credibility, and is ultimately a question for the fact finder.  To the extent defendant's argument goes to the merits – in that if Solis did not lower a final rating then there could have been no effect on her promotion applications – such an argument does not negate Solis's testimony regarding Byrnes's views on Phillips's EEOC complaints.  Even if a fact finder were to conclude that Solis never actually lowered a rating at Byrnes's request, the evidence would still permit a fact finder to conclude that Byrnes had retaliatory animus, and that that animus affected previous evaluations that Byrnes either completed himself or reviewed as a second-level supervisor.  If, as Solis testified, Byrnes pressured *him* to lower Phillips's ratings, a reasonable fact-finder could infer that Byrnes pressured other first-line supervisors to do so as well, in those evaluations for which he served as second-line supervisor.

Similarly unpersuasive is defendant's argument that the timing of Solis's involvement with Phillips comes too late to raise an issue of fact with respect to non-selections that pre-date Solis's evaluations.  (Def. Reply Mem. Supp. Summ. J. 9-10.)  Defendant is correct that any evaluation completed by Solis after a non-selection would not be relevant to that prior non-selection.  However, Solis's testimony suggests not merely that he lowered one evaluation, but

_____

[6] In 1997, 1998, and 1999 the direct supervisor who approved her evaluations was Loretta Wilhite (Def. Rule 56.1 Stmt. ¶¶ 7, 10), in 2000 the supervisor was Byrnes (id. ¶ 28), in 2001 it was Michael Borgen (id. ¶ 52), and in 2002 and 2003 it was Stephen Rosina (id. ¶ 129).

SO ORDERED.

Dated: New York, New York
       December 15, 2005

_____

GERARD E. LYNCH
United States District Judge